IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

NELSON MICKENS, JR.,

    Plaintiff,

v.

WILLIAM DANFORTH,

    Defendant.

CIVIL ACTION NO.: 5:23-cv-49

**REPORT AND RECOMMENDATION**

Defendant filed a Motion to Dismiss Plaintiff's Amended Complaint. Doc. 15. Plaintiff filed a Response in opposition. Doc. 24. Defendant filed a Reply. Doc. 29. For the following reasons, I **RECOMMEND** the Court **GRANT** Defendant's Motions to Dismiss and **DISMISS without prejudice** Plaintiff's Amended Complaint based on his failure to exhaust available remedies.[1] Because I have recommended dismissal in this case, I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Plaintiff leave to proceed *in forma pauperis* on appeal.

---

[1] Plaintiff added Defendants Tyrone Oliver, Mr. Jefferson, and Ms. Clements in his Amended Complaint. Doc. 9 at 2–3. The Clerk of Court did not add these three Defendants to the docket. These three Defendants have not appeared, and the Court did not order service on them. Since Defendants Oliver, Jefferson, and Clements have not been served or added to the docket, Defendant Danforth did not ask the Court rule on Plaintiff's claims against them. Doc. 15 at 1 n.1. However, the same PLRA exhaustion requirements apply to Plaintiff's claims against Defendants Oliver, Jefferson, and Clements. Therefore, Plaintiff's claims against Defendants Oliver, Jefferson, and Clements are due for dismissal on the same grounds.

## BACKGROUND

**I.   Procedural History**

Plaintiff filed a Complaint against Defendant Danforth in the Superior Court of Coffee County on May 9, 2023.  Doc. 1-2.  Defendant Danforth removed the case to this Court on June 7, 2023.  Doc. 1.  Defendant Danforth filed a motion to dismiss Plaintiff's Complaint on June 14, 2023.  Doc. 5.  The Court received Plaintiff's Amended Complaint on June 20, 2023.  Doc. 9.  On June 21, 2023, the Court ruled Plaintiff timely filed his Amended Complaint as a matter of course under Federal Rule of Civil Procedure 15(a)(1) and denied the initial motion to dismiss as moot.  Doc. 10.  Defendant Danforth filed the instant Motion to Dismiss on July 3, 2023.  Doc. 15.

**II.  Plaintiff's Amended Complaint**

Plaintiff made the following allegations in his Amended Complaint.  Plaintiff, a state prisoner, was transferred to Coffee Correctional Facility ("CCF") from Long State Prison on April 7, 2022.[2]  Doc. 9 at 4.  Upon arrival at CCF, a gang member threatened Plaintiff on behalf of a family member of a victim to a crime Plaintiff committed.  Id.  The family member worked for the Georgia Department of Corrections.  Id.  This was the third prison at which someone had conveyed a threat against Plaintiff on behalf of this particular family member.  Id.

Plaintiff reported the threats to prison staff.  Plaintiff told Ms. Clements, a "unit manager/counselor," and Ms. Claxton, a gang investigator.  Id. at 5.  Ms. Claxton told Plaintiff she would restore his protective custody status, put him "in the hole for a few weeks," and then send him back to Long State Prison.  Id.  Plaintiff asked Ms. Clements and Ms. Claxton to put

---

[2]   In the Amended Complaint, Plaintiff states he was transferred on "April 7, 2023," but that is clearly a scrivener's error.  In his earlier Complaint and other filings, Plaintiff makes it clear he was transferred from Long State Prison in 2022, not 2023.

2

him in a protective custody dorm instead of segregation. They explained CCF does not have a protective custody dorm. Id. Plaintiff was placed in a protective custody cell located in a segregation portion of the prison. Id.

Plaintiff remained in segregation for 10 months. Id. Plaintiff received death threats three or four times a month while in segregation. Plaintiff reported the threats to prison officials, but nothing was done about the threats. Id. at 6. Plaintiff was locked in a cold cell, "laying on steel," with a thin mattress. Id. This resulted in pain and injuries to Plaintiff's neck, shoulders, hips, and back. Id. Plaintiff alleges that occasionally Defendants Danforth and Jefferson would conduct walk-through inspections of the dorm where Plaintiff was housed. Plaintiff asked Ms. Clements for a transfer to another facility. Id. at 7. Ms. Clements and the head of security, Mr. Lemon, gave Plaintiff only one option to get out of segregation: sign off on a release from protective custody and "go back on the compound" where Plaintiff would be exposed to dangerous gangs. Id. Plaintiff was finally transferred after speaking to another prison official, Ms. Gay. Id. at 8.

Plaintiff claims the unsafe conditions at CCF constituted cruel and unusual punishment under the Eighth Amendment. Id. at 9. Plaintiff asks for declaratory relief, compensatory damages, and punitive damages.[3] Id. at 9–10.

## DISCUSSION

Defendant filed the instant Motion to Dismiss, arguing Plaintiff failed to exhaust his administrative remedies and failed to state a claim upon which relief can be granted. Doc. 15. Defendant also contends Plaintiff fails to state a claim for injunctive relief, and even if Plaintiff

---

[3] Plaintiff added Tyrone Oliver as a Defendant in the Amended Complaint but makes no factual allegations about Oliver, other than to state Oliver is the Commissioner of the Georgia Department of Corrections. Doc. 9 at 2.

had asserted such a claim, it would be moot because Plaintiff has now been transferred to another facility.  Id. at 3.

I.      **Prison Litigation Reform Act's Exhaustion Requirements**

Under the Prison Litigation Reform Act ("PLRA"), an incarcerated individual must properly exhaust all available administrative remedies—including the prison's internal grievance procedures—before filing a federal lawsuit to challenge prison conditions.  42 U.S.C. § 1997e(c)(1); see Jones v. Bock, 549 U.S. 199, 202 (2007); Harris v. Garner, 216 F.3d 970, 974 (11th Cir. 2000).  The purpose of the PLRA's exhaustion requirement is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."  Whatley v. Warden, Ware State Prison (Whatley I), 802 F.3d 1205, 1208 (11th Cir. 2015) (quoting Woodford v. Ngo, 548 U.S. 81, 93 (2006)).

Proper exhaustion is mandatory, and courts have no discretion to waive or excuse it based on improper or imperfect attempts to exhaust, no matter how sympathetic the case or how special the circumstances.  Ross v. Blake, 578 U.S. 632, 639 (2016) (finding the PLRA requires exhaustion "irrespective of any 'special circumstances'" and its "mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account"); Jones, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.").  Courts may not consider the adequacy or futility of the administrative remedies afforded to the inmate.  Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (noting an inmate's belief administrative procedures are futile or needless does not excuse the exhaustion requirement).  Rather, courts may only determine whether administrative remedies are available and whether the inmate properly exhausted these remedies prior to bringing his federal claim.  Id.

Proper exhaustion requires compliance with the prison's administrative policies, deadlines, and other procedural rules. Woodford v. Ngo, 548 U.S. 81, 91–92 (2006); Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'") (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005))). "[A]n inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit." Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (quoting Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000)); Gooch v. Tremble, No. 1:18-cv-058, 2018 WL 2248750, at *3 (S.D. Ga. Apr. 20, 2018) ("[B]ecause exhaustion of administrative remedies is a 'precondition' to filing an action in federal court, Plaintiff had to complete the entire administrative grievance procedure before initiating this suit." (quoting Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000))). An incarcerated individual cannot "cure" an exhaustion defect by properly exhausting all remedies after filing suit. Terry, 491 F. App'x at 83; Harris, 216 F.3d at 974.

To properly exhaust, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the administrative grievance process. Bryant, 530 F.3d at 1378; see also Okpala v. Drew, 248 F. App'x 72, 73 (11th Cir. 2003) (affirming sua sponte dismissal for failure to exhaust when a federal inmate submitted a written complaint and appealed the decision but filed his lawsuit before receiving the final decision on his appeal); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

## II.     Standard of Review for Exhaustion

A defendant may raise an inmate-plaintiff's failure to exhaust as an affirmative defense. Jones, 549 U.S. at 216 ("We conclude that failure to exhaust is an affirmative defense under the PLRA . . . ."); Pearson v. Taylor, 665 F. App'x 858, 867 (11th Cir. 2016); Whatley I, 802 F.3d at 1209.  When so raised, "[d]efendants bear the burden of proving that the plaintiff failed to exhaust his administrative remedies." Pearson, 665 F. App'x at 867 (quoting Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008)); see also Trevari v. Robert A. Deyton Det. Ctr., 729 F. App'x 748, 752; White v. Berger, 709 F. App'x 532, 541 (11th Cir. 2017); Dimanche v. Brown, 783 F.3d 1204, 1210 (11th Cir. 2015); Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008).

While exhaustion is a mandatory requirement for bringing suit, one exception exists. Ross, 578 U.S. at 642 ("The PLRA contains its own, textual exception to mandatory exhaustion."). "Under the PLRA, a prisoner need exhaust only 'available' administrative remedies." Id. at 638; see also Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017).  Drawing from the plain language of the word "available," the United States Supreme Court has concluded "an inmate is required to exhaust . . . only those[] grievance procedures that are 'capable of use' to 'obtain some relief for the action complained of.'" Ross, 578 U.S. at 642; Turner, 541 F.3d at 1084 (quoting Goebert v. Lee County, 510 F.3d 1312, 1322–23 (11th Cir. 2007) ("A remedy has to be available before it must be exhausted, and to be 'available' a remedy must be 'capable of use for the accomplishment of its purpose.'")).  "Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available." Turner, 541 F.3d at 1084.

Courts recognize "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Ross, 578 U.S. at 642. First, "an administrative procedure is unavailable when (despite what regulations or guidance

6

materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id.; Turner, 541 F.3d at 1083 (noting the PLRA "does not require inmates to craft new procedures when prison officials demonstrate . . . they will refuse to abide by the established ones"). Second, exhaustion is not required when an administrative procedure is "so opaque" or "unknowable" "no ordinary prisoner can discern or navigate it." Ross, 578 U.S. at 643–44. Finally, "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation[,]" such thwarted inmates are not required to exhaust. Id. at 644; Abram v. Leu, 759 F. App'x 856, 860 (11th Cir. 2019) ("An administrative remedy may be unavailable when prison officials interfere with a prisoner's pursuit of relief."); Dimanche, 783 F.3d at 1214 ("The PLRA does not 'require[] an inmate to grieve a breakdown in the grievance process.'" (quoting Turner, 541 F.3d at 1083)); Miller v. Tanner, 196 F.3d 1190, 1194 (11th Cir. 1999) (finding exhaustion does not require plaintiff-inmates "to file an appeal after being told unequivocally that appeal of an institution-level denial was precluded").

In Turner v. Burnside, the Eleventh Circuit laid out a two-part test for resolving motions to dismiss for failure to exhaust administrative remedies under § 1997e(a). 541 F.3d at 1082. First, courts "look[] to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." Id.; see also Bracero v. Sec'y, Fla. Dep't of Corr., 748 F. App'x 200, 202 (11th Cir. 2018). This prong of the Turner test ensures there is a genuine dispute of material fact regarding the inmate-plaintiff's failure to exhaust. Glenn v. Smith, 706 F. App'x 561, 563–64 (11th Cir. 2017) (citing Turner, 541 F.3d at 1082); Pavao, 679 F. App'x at 824. "The court should dismiss [the action] if the facts as stated by the prisoner show a failure to exhaust." Abram, 759 F. App'x at 860

7

(quoting Whatley v. Warden, Ware State Prison (Whatley I)), 802 F.3d 1205, 1209 (11th Cir. 2015)); Turner, 541 F.3d at 1082 ("This process is analogous to judgment on the pleadings under Federal Rule of Civil Procedure 12(c).").

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." Turner, 541 F.3d at 1082; see also Glenn, 706 F. App'x at 563–64; Pearson, 665 F. App'x at 867 ("At the second step, the court [is] permitted to make factual findings to resolve the issue of exhaustion."). After resolving the factual disputes, the court then decides whether, "based on those findings, defendants have shown a failure to exhaust." Bracero, 748 F. App'x at 202 (quoting Whatley I, 802 F.3d at 1209). Additionally, "[w]hen ruling on a motion to dismiss for failure to exhaust administrative remedies, the court may consider evidence outside the pleadings." Berger, 709 F. App'x at 541 n.4 (citing Bryant v. Rich, 530 F.3d 1368, 1376 (11th Cir. 2008)); Glenn, 706 F. App'x at 563–64; Singleton v. Dep't of Corr., 323 F. App'x 783, 785 (11th Cir. 2009) (citing Bryant, 530 F.3d at 1376) ("A district court may properly consider facts outside of the pleadings to resolve a factual dispute regarding exhaustion where the factual dispute does not decide the merits and the parties have a sufficient opportunity to develop the record.").

### III. Applying Turner

#### A. The Georgia Department of Corrections' ("GDC") Administrative Remedies

Coffee Correctional Facility utilizes the GDC procedure for prison grievances. Doc. 15-1 at 1. The GDC's grievance procedure is set out in Standard Operating Procedure ("SOP") 227.02. Id. at 7–25. Under SOP 227.02, inmates "may file a grievance about any condition, policy, procedure, or action or lack thereof that personally affects the Offender" and is not

expressly listed in the SOP as a "non-grievable issue."  Id. at 10.  Non-grievable issues include disciplinary actions, involuntary assignments to administrative segregation, and transfers of offenders between facilities.  Id. at 10–11.  Disciplinary appeals are governed by SOP 209.01.  Id. at 10.  Housing assignments and security classifications are non-grievable issues unless there is a threat to the offender's health of safety.  Id. at 11.  Appeals for housing assignments and security classifications are governed by SOP 220.003.  Id.

The grievance procedure consists of two steps, the original grievance and the Central Office Appeal.  Id. at 14–21.  Under SOP 227.02, original grievances must be filed within 10 days from the date the inmate knew or should have known of the facts giving rise to the grievance.  Id. at 14.  The Warden has 40 calendar days to respond to the grievance.  Id. at 17.  After the inmate receives the Warden's response to his original grievance, or if the time allowed for the Warden's response has expired, an inmate may appeal the decision to the Central Office.  Id. at 20.  An inmate has seven days from the date of the warden's response to file the Central Office Appeal.  Id.  The Commissioner has 120 days to respond to the Central Office Appeal.  Id. at 21.  After filing a Central Office Appeal and receiving a response, the grievance procedure is complete.  Id. at 3.

### B.     Plaintiff Failed to Exhaust His Available Administrative Remedies

At step one under Turner, the Court must consider the "factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, take[] the plaintiff's version of the facts as true."  Turner, 541 F.3d at 1080–82.

Defendant contends Plaintiff did not file a grievance about threats from other inmates or about his health and safety concerns.  Doc. 15 at 5, 9.  Defendant acknowledges Plaintiff filed a

9

grievance on June 24, 2022, but that grievance only stated Plaintiff asked for protective custody but was placed a 24-hour lockdown disciplinary segregation unit. Plaintiff requested a transfer back to Long State Prison in this grievance. Id. at 5. This grievance was filed more than two months after Plaintiff was placed in segregation. Id. at 9. Notably, the June 24, 2022 grievance did not mention any individual corrections officer and did not contain any complaints about Plaintiff's health, safety, or threats from other prisoners. The grievance was denied because it did not conform with the procedure for grievances related to disciplinary action or transfers between institutions. Id. at 5. Plaintiff appealed to the Warden and the Central Office, and the appeal was denied at both levels. The appeal was denied at the Central Office level because Plaintiff raised multiple issues. Id. Plaintiff raised issues about law library access and mental health concerns in his appeal, though he did not raise these issues in his grievance. Id.

      Plaintiff does not deny Defendant's allegations. Plaintiff instead states he notified various prison officials, including Defendant Danforth, about the segregation conditions and death threats. Doc. 24 at 5–6. Plaintiff argues he exhausted his administrative remedies because he notified the prison administration "more than once." Id. at 6. Plaintiff does allege he filed any formal grievances about the issues giving rise to his claims in this action.

      Plaintiff's and Defendant's accounts do not conflict. According to the parties' allegations, Plaintiff filed one grievance on June 24, 2022, because he was placed in disciplinary segregation and requested a transfer to another prison with a protective custody unit. Plaintiff's grievance did not include any complaints about his health, safety, or threats from other prisoners—the issues giving rise to Plaintiff's claims in this case. Taking Plaintiff's allegations as true, Plaintiff notified prison officials about his concerns through other means, but Plaintiff

10

did not initiate any grievances about his health, safety, or threats from other inmates. Further, there is no dispute the grievance Plaintiff filed on June 24, 2022, was untimely.

Plaintiff's claims should be dismissed because Plaintiff did not grieve the issues found in his Amended Complaint. Plaintiff sued Defendant for "unsafe conditions," according to his Amended Complaint. Doc. 9 at 9. Plaintiff described threats from a gang member on behalf of a correctional employee and injuries he suffered from a "freezing cold cell, laying on steel with a thin mattress" in segregation. Id. at 6. Plaintiff filed a grievance, but he did not say anything about unsafe conditions, threats, or injuries. Because of the timing and content of the June 24, 2022 grievance, the grievance did not afford corrections officials time or opportunity to address Plaintiff's complaints internally, so Plaintiff should not now be allowed to sustain a federal case at this time. To the extent Plaintiff brings a claim based on the fact of his placement in segregation, his claims should also be dismissed because his related grievance was untimely. See Johnson v. Meadows, 418 F.3d 1152, 1159 (11th Cir. 2005) ("[A]n untimely grievance does not satisfy the exhaustion requirement of the PLRA."). Therefore, under Turner step one, I conclude Plaintiff failed to exhaust his available administrative remedies before bringing suit. The Court should **GRANT** Defendant's Motion and **DISMISS** Plaintiff's Amended Complaint based on his failure to exhaust his administrative remedies.[4]

---

[4] To the extent there is any dispute of fact and the Court would need to proceed to Turner step two, I would find the record demonstrates Plaintiff did not exhaust available administrative remedies. The record shows Plaintiff filed one out-of-time grievance about his housing assignment, but that grievance made no mention of the issues that form the basis for Plaintiff's claims in this case. Furthermore, Plaintiff made no request to file an out-of-time grievance and, when Plaintiff did appeal the denial of that grievance, he included numerous non-grievable issues, in violation of the governing SOP. Thus, if it were necessary to proceed to step two, I would conclude Plaintiff's claims are due to be dismissed under that portion of the Turner test, as well.

Because Plaintiff's claims are due to be dismissed for failure to exhaust his administrative remedies, I decline to address Defendant Danforth's argument for dismissal based on failure to state a claim.

IV. **Leave to Appeal** *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*. Though Plaintiff has not yet filed a notice of appeal as to this disposition, it is proper to address this issue now. See Fed. R. App. P. 24(a)(3) (noting trial court may certify appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Thus, a claim is frivolous and not brought in good faith if it is "'without arguable merit either in law or fact.'" Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis, there are no non-frivolous issues to raise on appeal, and an appeal on these claims would not be taken in good faith. Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

For the foregoing reasons, I **RECOMMEND** the Court **GRANT** Defendant's Motion to Dismiss and **DISMISS without prejudice** Plaintiff's Amended Complaint based on his failure to exhaust available remedies. Because I have recommended dismissal in this case, I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Plaintiff leave to proceed *in forma pauperis* on appeal.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Any objection the Magistrate Judge failed to address a contention raised in the Complaint or an argument raised in a filing must be included. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C); <u>Harrigan v. Metro Dade Police Dep't Station #4</u>, 977 F.3d 1185, 1192–93 (11th Cir. 2020). To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections. <u>Harrigan</u>, 977 F.3d at 1192–93; 11th Cir. R. 3-1. A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United

States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 7th day of February, 2024.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA